UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZEETOGROUP, LLC; TIBRIO, LLC,<br><br>　　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>NICHOLAS FIORENTINO, an individual; SABIHA TUDESCO, an individual; INTERNET THINGS, LLC; SIMPLY SWEEPS, LLC; CREDIREADY, LLC; TWO MINUTE MEDIA TOPICS, LLC; and DOES 1-100, inclusive,<br><br>　　　　　　　　　　　Defendants. | Case No.: 19-CV-458 JLS (NLS)<br><br>**ORDER GRANTING MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**<br><br>(ECF No. 56) |

Presently before the Court is Plaintiffs' Motion for Leave to File First Amended Complaint ("Mot.," ECF No. 56). Also before the Court is Defendants' Opposition to ("Opp'n," ECF No. 63) and Plaintiffs' Reply in Support of ("Reply," ECF No. 67) the Motion. The Court vacated the hearing and took the Motion under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). *See* ECF No. 68. After considering the Parties' arguments and the law, the Court **GRANTS** Plaintiffs' Motion.

///

///

# BACKGROUND

Plaintiffs ZeetoGroup, LLC and Tibrio, LLC are San Diego-based internet lead generation companies. *See* Mot. at 5. Defendant Internet Things, LLC is a competing internet lead generation company. *See id.* Defendant Nicholas Fiorentino is the founder and CEO of Internet Things. *Id.* at 6. Internet Things, owns and operates multiple subsidiaries, including Defendants Simply Sweeps, LLC; CrediReady, LLC; and Two Minute Media Topics (together, the "Entity Defendants"). *See* ECF No. 30 at 2.

Sometime in 2018, Mr. Fiorentino began recruiting Plaintiffs' employees. Mot. at 6. Among those employees was Rocky Iorio. Mot. at 6–7. Plaintiffs employed Mr. Iorio until November 1, 2018, when Mr. Iorio accepted a job with Defendant Internet Things. *Id.* at 6. During Mr. Iorio's final weeks working for Plaintiffs, Mr. Fiorentino reached out to Mr. Iorio and asked him for a list of Plaintiffs' "big buyers." *Id.* Mr. Iorio complied with this request and sent Mr. Fiorentino screen shots of Plaintiffs' big buyers, as well as "what campaign was working the best for each buyer, the revenue brought in by each campaign, the price point at which the traffic was being sold, and the competitive performance metrics." *Id.* After becoming aware of Mr. Iorio's actions, Plaintiffs discovered that many of the campaigns used by the Entity Defendants were the same as the campaigns Mr. Iorio provided to Mr. Fiorentino. *Id.* at 6. Defendants use of these campaigns led to damage to Plaintiffs' reputation, advertisers spending less money with Plaintiffs, Plaintiffs' revenue to decline substantially, and ultimately lay-offs of 23 of Plaintiffs' employees. *Id.* at 5–6.

On March 8, 2019, Plaintiffs filed their Complaint seeking damages caused by Defendants' misappropriation of trade secrets and confidential information. *See* ECF No. 1 at 6–8. In October 2019, Plaintiffs sent Defendants interrogatories and document requests. Declaration of Jacob A. Gillick, Esq. ("Gillick Decl.") ¶ 1; Mot. Ex. 2 at 11–239, ECF No. 56-2; Mot. at 9. Plaintiffs complained that Defendants' responses were evasive and included no documentation; consequently, the Parties met and conferred in December 2019 and Defendants' agreed to supplement the responses. Gillick Decl. ¶¶ 3, 4; Mot. at 9; Mot.

Ex. 2.  Instead of providing supplemental discovery responses, however, in late December or early January, Defendants informed Plaintiffs that the Entity Defendants had all gone out of business.  Gillick Decl. ¶ 5; Mot. at 9.

On March 19, 2020, Plaintiffs provided a notice to compel discovery to Defendants.  *See* Gillick Decl. ¶ 12; Mot. Ex. 6, ECF No. 56-2 at 253–58.  In response, counsel for the Entity Defendants claimed the entities were "defunct" and had ceased operating.  *See* Gillick Decl. ¶ 13.  Plaintiffs' counsel then checked the California Secretary of State's website and discovered that, three weeks after Plaintiffs served the Complaint, the Entity Defendants had been converted into new limited partnerships: Internet Things, LP; Simply Sweeps, LP; Crediready, LP; and Two Minute Media Topics, LP (together, the "New LPs").  *See* Mot. at 10; Gillick Decl. ¶ 13.

Plaintiffs also discovered the conversions were initiated by Marc Barmazel through Premier Realty Management, Inc.  *See* Gillick Decl. ¶ 13; Opp'n at 2.  Mr. Barmazel is an investor in the Entity Defendants and owner of Premier Realty Holdings, LP; Premier Realty Management, Inc.; and Sunrise Self-Storage Management, Inc. (together, the "Premier Entities").  *See id.*  After presenting Defendants with this newly discovered information, on April 27, 2020, Plaintiffs received supplemental discovery from Defendants.  Gillick Decl. ¶¶ 13–14; Opp'n at 3.  This new discovery included a litany of emails showing Mr. Barmazel's involvement in the Entity Defendants' day-to-day business affairs.  *See* Reply at 4–7.  Plaintiffs allege that Mr. Barmazel not only knew that Mr. Fiorentino was misappropriating trade secrets, but that he was "deeply involved" in the affair.  Mot. at 13.  Further, Plaintiffs allege that Mr. Barmazel was, in fact, "running the show" when the misappropriation occurred and is therefore liable for the misappropriation of trade secrets.  *See* Reply at 2.

During discovery, Plaintiffs also discovered that Mr. Fiorentino's ownership interest in the Entity Defendants and the New LPs is through Fiorentino Holdings, LLC— Mr. Fiorentino's "suspected alter-ego."  Mot. at 10.

After making these discoveries, Plaintiffs filed their motion to amend.

3

## LEGAL STANDARDS

### I. Rule 16

Federal Rule of Civil Procedure 16(b)(4) provides that "[a] schedule may be modified only for good cause and with the judge's consent." Civil Local Rule 16.1(b) requires all counsel and parties to "proceed with diligence to take all steps necessary to bring an action to readiness for trial." In determining whether there is "good cause" under Rule 16(b), the Court "primarily considers the diligence of the party seeking the amendment" and the "moving party's reasons for seeking modification." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

### II. Rule 15

Pursuant to Federal Rule of Civil Procedure 15(a), a plaintiff may amend his complaint once as a matter of course within specified time limits. Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15 (a)(2).

While courts exercise broad discretion in deciding whether to allow amendment, they have generally adopted a liberal policy. *See U.S. for Benefit & Use of Ehmcke Sheet Metal Works v. Wausau Ins. Cos.*, 755 F. Supp. 906, 908 (E.D. Cal. 1991) (citing *Jordan v. Cty. of L.A.*, 669 F.2d 1311, 1324 (9th Cir.), *rev'd on other grounds*, 459 U.S. 810 (1982)). Accordingly, leave is generally granted unless the court harbors concerns "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## ANALYSIS

Plaintiffs seek to amend their Complaint to add the New LPs; Fiorentino Holdings, LLC; Mr. Barmazel; and the Premier Entities as Defendants in this case. Mot. at 5. Plaintiffs allege that without their addition in this case, the responsible parties will avoid

liability and "set a precedent which would make litigation fruitless." *Id.* at 17. Because Plaintiffs seek to amend their Complaint after the scheduling order deadline to amend pleadings, *see id.* at 15, Plaintiffs must meet both the Rule 16 standard to amend the scheduling order, as well as the Rule 15 standard to amend pleadings.

**I.   Rule 16**

To amend a pleading after a scheduling order deadline, the party seeking amendment must first satisfy the Rule 16(b) "good cause" standard to amend the scheduling order. *See Johnson*, 975 F.2d at 609. Rule 16's good cause standard primarily considers the due diligence of the party seeking to amend. *Id.* Pretrial scheduling orders can only be amended where the orders could not "reasonably [have been] met despite the diligence of the party seeking the extension." *Id*.

The deadline to amend the pleadings as set forth in the scheduling order was September 16, 2019. Mot. at 15. Plaintiffs contend that the timeline of events show they could not have met this deadline. *See id.* Although the Entity Defendants were converted out and re-established as limited partnerships on March 28, 2019—three weeks after this lawsuit was originally filed—Plaintiffs did not become aware of the New LPs until March 2020. Mot. at 10. This is because, rather than providing Plaintiffs with this information, Defendants led Plaintiffs to believe that the Entity Defendants had all gone out of business. Gillick Decl. ¶¶ 4–5. Once this information was learned, however, Plaintiffs diligently sought discovery from Defendants. *See id.* at 9–10. Through that discovery, Plaintiffs discovered Fiorentino Holdings, LLC's, Mr. Barmazel's, and the Premier Entities' involvement in this case. *See id.* at 10, 16. Plaintiffs allege that the identities and involvement of the proposed defendants could have been discovered only after the production of documents in April 2020, despite Plaintiffs' due diligence. *See id.* at 10–13.

Because the entire proposed amendment is based on information that was not readily available to Plaintiffs prior to the scheduling order deadline—despite Plaintiffs' due diligence—the deadline could not reasonably have been met. Therefore, the Court finds good cause present to amend the scheduling order. Because the Court finds good cause to

amend the scheduling order under Rule 16, the Court next looks to whether amendment of the Complaint is proper under Rule 15. *See Johnson*, 975 F.2d at 608.

## II. Rule 15

Under Rule 15, leave is generally granted unless the court harbors concerns "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman*, 371 U.S. at 182. The Court considers Plaintiffs' requests to add the New LPs; Fiorentino Holdings, LLC; Mr. Barmazel; and the Premier Entities as defendants in turn.

Plaintiffs first request to add the New LPs as defendants. Mot. at 15, 18. In their Opposition, Defendants consent to the addition of the New LPs. *See* Opp'n at 3–4. According to Rule 15(a)(2), a party may amend their complaint with the opposing party's written consent. Accordingly, the Court **GRANTS** Plaintiffs leave to amend their complaint to add the New LPs as defendants.

Plaintiffs also request to add Fiorentino Holdings, LLC as a defendant. *See* Mot. at 5. Although Defendants do not consent to the addition of Fiorentino Holdings, they also do not present any arguments against adding Fiorentino Holdings, LLC. *See generally* Opp'n. Because the Court harbors no concerns regarding amendment as to this party, the Court **GRANTS** Plaintiffs' Motion as to Fiorentino Holdings, LLC.

Next, Plaintiffs seek to amend the complaint to add Mr. Barmazel as a defendant. *See* Mot. at 5. Defendants dispute the addition of Mr. Barmazel, claiming there is no legal basis to add him as an individual defendant. Opp'n at 4. Defendants challenge the addition of Mr. Barmazel on the grounds of futility. *Id.* at 4–5. Defendants contend that under California law, Mr. Barmazel cannot be liable as an individual investor for the actions of the Entity Defendants, and he cannot be liable for the New LPs actions because he is not a general partner. *See id.* at 5–6. In response, Plaintiffs contend that Mr. Barmazel is liable as an individual because the entities are nothing more than Barmazel's alter ego and, therefore, the corporate veil has been pierced. Reply at 2–3. In support of this theory of

liability, Plaintiffs offer documents and emails that purportedly prove this theory of liability. *See generally* Gilleck Decl.

Under the alter ego doctrine, "a corporation's acts and obligations can be legally recognized as those of a particular person, and vice versa." *See Temple v. Bodega Bay Fisheries, Inc.*, 180 Cal. App. 2d 279, 283 (1960). Plaintiffs have provided arguments and evidence enough to show that Mr. Barmazel could potentially be liable under an alter-ego theory. Thus, adding him as a defendant is not futile. *See Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) (an amendment is futile when "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim"), *implied overruling on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The Court therefore **GRANTS** Plaintiffs' Motion to add Mr. Barmazel.

Finally, Plaintiffs seek to amend their Complaint to add the Premier Entities. Mot. at 5. Defendants dispute the addition of the Premier Entities, arguing (1) that granting leave "would irreparably prejudice" the Premier Entities, Opp'n at 5; (2) that Plaintiffs' Motion is brought in bad faith, *id.* at 6; and (3) that adding the Premier Entities as Defendants would be futile. *Id.* at 5–6.

First, Defendants challenge the addition of the Premier Entities on the grounds that the addition "would irreparably prejudice" the Premier Entities. *See id.* at 5. Defendants only claim of prejudice is that the Premier Entities are "totally unrelated to the facts alleged [in the complaint] and their business is purely real estate ventures." *Id.* Defendants, however, fail to show why that would cause any actual prejudice. The case is in its early stages and discovery is ongoing. *See DCD Programs, Ltd. V. Leighton*, 833 F.2d 183, 188 (9th Cir. 1987) (finding no prejudice where the case was still at the discovery stage of proceedings). Moreover, Plaintiffs have alleged connections among the Premier Entities and the Entity Defendants, s*ee* Reply at 8, as well as Mr. Barmazel, who Plaintiffs allege "regularly failed to recognize any corporate formalities between himself and [the Premier Entities]." *Id.* at 2. The Court therefore finds the Premier Entities would not be prejudiced.
///

Second, Defendants argue that Plaintiffs' Motion was brought in bad faith, "designed primarily to harass and drain the financial resources of the opposing party" and delay proceedings. *See* Opp'n at 6. The Court finds no persuasive evidence that Plaintiffs' request was brought in bad faith. Allowing Plaintiffs to amend their complaint will not cause undue delay to Defendants. And any delay can be attributed to the Defendants failure to provide information about the Entity Defendants' reorganizations. Thus, the Court finds no bad faith. *See DCD Programs*, 833 F.2d at 187 (finding no bad faith where there is a satisfactory explanation for the delay and no other evidence to indicate a wrongful motive).

Third, Defendants challenge the addition of the Premier Entities on the grounds of futility, asserting that the Premier Entities have no interest in or connection to the Entity Defendants. Opp'n at 5–6. In response, Plaintiffs assert that the Premier Entities belong in the case because they are "inextricably intertwined" with Mr. Barmazel such that they are his alter egos, and they have a relevant interest in the Entity Defendants. Reply at 2–3, 6. Defendants' arguments do not clearly foreclose Plaintiffs' claims and, therefore, at this point it is not clear that the addition of the Premier Entities would be futile. *See Miller*, 845 F.2d at 214.

Because the Court does not harbor concerns over undue delay, bad faith, undue prejudice, or futility, the Court **GRANTS** Plaintiffs' Motion to add the Premier Entities.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiffs' Motion to Amend the Complaint. Plaintiffs **SHALL FILE** their amended complaint <u>within seven days of the electronic docketing of this Order</u>.

**IT IS SO ORDERED.**

Dated: July 22, 2020

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge